PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 24 2000**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

vs.

PAUL BRADFORD JONES,

 Defendant - Appellant.

No. 99-4071

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 97-CR-06-B)

Brooke C. Wells, Assistant United States Attorney (and Paul M. Warner, United States Attorney, with her on the briefs), Salt Lake City, Utah, for Plaintiff - Appellee.

Reid W. Lambert, Woodbury & Kesler, P.C., Salt Lake City, Utah, for Defendant - Appellant.

Before **KELLY**, **McWILLIAMS**, and **HENRY**, Circuit Judges.

**KELLY**, Circuit Judge.

 Defendant-Appellant Paul Bradford Jones appeals from his conviction on

two counts of interference with commerce by threats or violence (Hobbs Act), 18

U.S.C. § 1951, one count of bank robbery, 18 U.S.C. § 2113(a), two counts of

armed bank robbery, 18 U.S.C. § 2113(a) & (d), three counts of carrying and using a firearm during a crime of violence, 18 U.S.C. § 924(c)(1), one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, 18 U.S.C. § 922(g). Mr. Jones received a mandatory life sentence, 18 U.S.C. § 3559(c)(1), plus 45 years to run consecutively.

The convictions stem from a several-month crime spree across Utah. Mr. Jones was first charged in a three-count federal indictment on February 2, 1995. Superseding indictments were filed over the next two years, during which time Mr. Jones pursued various motions. Trial was set for March 10, 1997. On March 6, 1997, Mr. Jones moved to dismiss the charges on the ground that his right to a speedy trial had been violated. The district court dismissed the charges, but dismissal was without prejudice. Mr. Jones was reindicted on the same charges the next day, and convicted after a jury trial.

He contends that the district court erred in: (1) dismissing the indictment without prejudice; (2) admitting evidence seized during a warrantless search of the residence where he was staying; (3) refusing to sever the "felon in possession" counts from the other counts; (4) limiting the cross-examination of a prosecution witness; (5) sentencing him to life imprisonment plus 45 years because such a sentence violates the Eighth Amendment; and (6) finding that an earlier robbery qualifies as a "serious violent felony" under the three-strikes

provision of 18 U.S.C. § 3559(c). Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

A. Speedy Trial Act

Based on a finding that Mr. Jones' rights under the Speedy Trial Act, 18 U.S.C. §3161, had been violated, the trial court dismissed the indictment on April 1, 1997. The dismissal was without prejudice, and Mr. Jones immediately was reindicted. Mr. Jones argues that, because of the egregious nature of the violation and the lack of prejudice to the public interest, the dismissal should have been with prejudice.

Mr. Jones previously appealed his convictions. In United States v. Jones, No. 97-4153, 1998 WL 777068 (10th Cir. Oct. 27, 1998), we reached only whether the dismissal under the Speedy Trial Act should have been with or without prejudice. Finding that the district court had erroneously undercounted the number of non-excludable days that had passed, the case was remanded to the district court to recalculate the total number of non-excludable days and to redetermine, based on that calculation, whether the dismissal should have been with prejudice. This court did not reach the other issues on appeal.

On remand, the district court recalculated and concluded that dismissal of the indictment without prejudice was appropriate. Mr. Jones contends that the

district court's recalculation still undercounts the proper number of non-excludable days, and that, given the factors to be considered by the district court, dismissal with prejudice was required.

The district court's decision to dismiss an indictment without prejudice for violation of the Speedy Trial Act is reviewed for an abuse of discretion.  See United States v. Taylor, 487 U.S. 326, 335-36 (1988);  United States v. Saltzman, 984 F.2d 1087, 1092 (10th Cir. 1993).  We do not need to reach the question of whether the district court correctly calculated the number of non-excludable days because we conclude that, even if Mr. Jones' contention that 414 non-excludable days passed is correct, the district court did not abuse its discretion in dismissing the indictments without prejudice. [1]

The relevant factors in determining whether a dismissal should be with or without prejudice are contained primarily in the statute, 18 U.S.C. §3162, and are further developed by the Supreme Court's decision in  United States v. Taylor, 487 U.S. 326 (1988).  Under 18 U.S.C. §3162(a)(2), the district court must consider, among other factors, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Act] and on the administration of

---

[1] Additionally, on remand the district court noted that it would have dismissed the indictments without prejudice even if Mr. Jones' calculation were correct.  See I R. doc. 82 at 13.

justice." In Taylor, the Supreme Court determined that prejudice to the defendant is another factor that should be taken into consideration by the district court. 487 U.S. at 333-34.

Of course, an appellate court cannot exercise discretion for the district court. When the district court has exercised that discretion, our function is to insure that the statute is effectuated, recognizing that "when the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." Id. at 337. Applying these standards, we uphold the decision to dismiss the indictment without prejudice.

1. Seriousness of the Crime

Mr. Jones concedes that the offenses he was convicted of are "extremely serious." Aplt. Br. at 25. He argues, however, that the seriousness of the offenses must be weighed against the severity of the delay, citing United States v. Russo, 741 F.2d 1264, 1267 (11th Cir. 1984) and United States v. Clymer, 25 F.3d 824, 831 (9th Cir. 1994). We agree with Mr. Jones that, because of the significant delay in this case, the seriousness of the charges does not automatically justify dismissal without prejudice. However, we cannot agree that "the seriousness of the offenses charged in this case are substantially outweighed by the severity of the delay." Aplt. Br. at 25. As the district court detailed on

remand, some of the crimes of which Mr. Jones was convicted involved intimidation, violence, and use of a firearm. The indictment charged multiple robberies. Additionally, Mr. Jones was violating his parole at the time. In short, we will not say that a particular delay automatically outweighs the seriousness of the offense, nor will we say that a particular offense is always so serious as to automatically outweigh any delay. This balancing is to be done by the district court in conjunction with the other enumerated factors, as was done here.

2. Circumstances Leading to Dismissal

In evaluating the circumstances precipitating the dismissal, the court is to focus "'on the culpability of the delay-producing conduct.'" United States v. Saltzman, 984 F.2d 1087, 1093 (10th Cir. 1993) (quoting United States v. Hastings, 847 F.2d 920, 925 (1st Cir. 1988)). "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." Id. at 1093-94. Here, no showing was made that the prosecution engaged in a pattern of neglect or bad faith. Much of the delay was attributable to the court's method of disposition of a suppression motion, and while the court and the government are each partly responsible for effectuating a defendant's right to a speedy trial, a defendant that lets the time run without asserting his rights under the Act has less of a claim to a dismissal with prejudice than a defendant who makes a timely

assertion, but is unheeded. <u>See</u> <u>id</u>. at 1094.

3.  <u>Impact of Reprosecution on the Speedy Trial Act and the Ends of</u> <u>Justice</u>

Mr. Jones contends that allowing reprosecution in this case would "send a message that the Act need not be seen as anything more than a potential inconvenience" and that dismissal with prejudice is necessary to "demonstrate to the government the seriousness of the [Act]." Aplt. Br. at 28-29.  While district courts obviously do not want to give the impression that the Speedy Trial Act is a mere formality that can be violated with impunity, dismissal with prejudice is not the only method for a court to show that violations must be taken seriously.  A dismissal without prejudice requires the government to re-indict, may work to the disadvantage of the government on limitations grounds, and may make reprosecution less likely.    See <u>Taylor</u>, 487 U.S. at 342.   As the Supreme Court observed in  <u>Taylor</u>, "If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution.   " <u>Id</u>.  The district court concluded that the administration of the Speedy Trial Act and the administration of justice would not be harmed by dismissal without prejudice because of a lack of actual prejudice occasioned by the delay, the defendant's likely custody on unrelated matters, and the timing and manner in which the Speedy Trial Act claim was brought to the

court's attention, specifically on the eve of trial. We find no error in the consideration of this factor.

### 4. Prejudice to the Defendant

Although not a statutory factor to consider, prejudice to the defendant may be a significant factor in determining whether to dismiss with prejudice. Id. at 340. Mr. Jones contends that he has suffered the following prejudice: (1) inability to locate a potential witness who moved during the time between his arrest and the trial; (2) the inevitable fading of memory of fact witnesses; and (3) his incarceration for over two years on unproven charges.

These assertions fail to show any material prejudice. The witness Mr. Jones claims to be unable to find would be a minor witness, and Mr. Jones has not shown how her testimony would have been at all helpful to him. Because he was in violation of both federal supervised release and Oregon state parole supervision at the time he was arrested, Mr. Jones was subject to serving the remainder of both a previously-imposed federal sentence as well as several unexpired state sentences during the time he was incarcerated on the current charges. While we do not say that a defendant who would otherwise be incarcerated can never suffer prejudice from excessive pre-trial detention, we agree with the district court that Mr. Jones did not suffer any material prejudice in this case.

The delay in this case, whether 216 non-excludable days as the Government

- 9 -

contends, or 414 non-excludable days as Mr. Jones contends, is very serious and suggests a need for case management better attuned to the Speedy Trial Act. Under different circumstances, such a lengthy delay would likely warrant dismissal with prejudice. However, given the seriousness of the crimes with which Mr. Jones was charged, the government's relative lack of culpability for the delay, and Mr. Jones' inability to demonstrate prejudice, we cannot say that the district court abused its discretion in dismissing the indictment without prejudice.

B. Admission of Evidence Obtained in Warrantless Search

Mr. Jones challenges the admission of evidence obtained when police conducted a warrantless search of a condominium where he was staying at the time of his arrest ("the condo"). Mr. Jones' initial motion to suppress addressed three distinct searches: (1) the search of the condo; (2) the search of Mr. Jones' briefcase which was discovered at the condo; and (3) the development of certain rolls of undeveloped film discovered at the condo. The district court granted Mr. Jones' motion to suppress the contents of the briefcase and the rolls of film, but denied his motion to suppress other evidence, finding that Mr. Jones lacked standing to challenge the search because he did not have a legitimate expectation of privacy in the condo.

In reviewing the denial of a motion to suppress evidence, we view the evidence in the light most favorable to the Government.  See United States v. Patten , 183 F.3d 1190, 1193 (10th Cir. 1999).  We also review the district court's findings of fact under a clear error standard, and give deference to the inferences the court draws from those findings.  See id.  However, the ultimate question of whether a person has standing to assert a Fourth Amendment challenge to a warrantless search is a legal question that we review de novo.  See United States v. Conway , 73 F.3d 975, 979 (10th Cir. 1995).  We agree that Mr. Jones did not have a legitimate expectation of privacy in the condo; thus, denial of the motion to suppress the evidence gathered in the warrantless search was proper.

1.    Background

Although there was conflicting testimony on several issues at the suppression hearing, the following background is taken from the findings of the magistrate judge which were approved by the district court.   These findings are not clearly erroneous based upon our review of the record.  Mr. Jones was arrested in a condominium in St. George, Utah, owned by Kelly Burton, a friend of co-defendant Arlene Rhode.  On the Tuesday before Thanksgiving, November 22, 1994, Ms. Burton received a telephone call from Ms. Rhode asking her if she could use the condo to spend Thanksgiving with her children.  Ms. Burton reluctantly agreed, on the condition that Ms. Rhode would first obtain the key to

the condo from Ms. Burton. Because Ms. Burton lived in Los Angeles, and Ms. Rhode lived in Salt Lake City, Ms. Rhode asked if she could instead simply use a locksmith to gain access to the condo. Ms. Burton adamantly refused. The two women than made arrangements to have the key picked up by a man named "David Harrison," which was an alias of co-defendant Tracy Linn Brown, who was then in southern California. At the time she agreed to let Ms. Rhode use the condo, Ms. Burton had no idea that Ms. Rhode had invited Mr. Jones and Mr. Brown, two convicted felons who were violating parole, to stay at the condo as well. She testified that she never would have granted permission to use the condo had she known Ms. Rhode had invited the others.

The key was never picked up, and Ms. Burton assumed that Ms. Rhode had changed her plans. In fact, Ms. Rhode arrived in St. George early in the morning of Wednesday, November 23, and convinced a locksmith to let her into the condo, violating the express directions of Ms. Burton. The next day, Ms. Rhode spoke to Mr. Brown, telling him he did not need to pick up the key as scheduled, because she had already gained access to the condo. Mr. Brown and Mr. Jones arrived late Thanksgiving night. Ms. Rhode never called Ms. Burton to let her know that she or the two men were staying there.

For several days the group stayed at the condo. On the night of Mr. Jones' arrest, December 1, 1994, the group had packed in preparation for their departure

- 12 -

the next morning. That same night, Mr. Jones and Mr. Brown robbed a local grocery store. Following the robbery, police chased the getaway car, which was eventually abandoned by the two men who ran toward a nearby apartment complex. The police later encountered Mr. Brown, who subsequently confessed to the robbery and named his partner as "Peter Birth," which was Mr. Jones' alias. Mr. Brown also told police the address of the condo where he and Mr. Jones were staying. At approximately 2:30 a.m. the police went to the condo. Ms. Rhode answered the door and denied knowing Peter Birth. Testimony conflicts on whether police were granted permission to search the residence for Mr. Jones. While searching the condo, police found the door to the master bedroom locked. After being refused permission to enter by Ms. Rhode's daughter, who was inside, police broke down the door and found Mr. Jones sitting on the bed. Police arrested him, and in the ensuing search of the condo found several pieces of incriminating evidence that were used at his trial.

2.    Fourth Amendment Standing

Mr. Jones contends that because the police entered and searched the condo without a warrant or exigent circumstances, his Fourth Amendment rights were violated and any evidence collected should be suppressed. The government responds by arguing that Mr. Jones lacks standing to challenge the warrantless search because he did not have a legitimate expectation of privacy and was

wrongfully on the premises.   In order to establish standing, Mr. Jones bears the burden of demonstrating that he had a personal Fourth Amendment interest that was implicated by the search of the condo.      See United States v. Benitez-Arreguin , 973 F.2d 823, 827 (10th Cir. 1992).  The test for determining standing is well-established, and relies upon two factors: (1) "'whether the individual, by his conduct has exhibited an actual (subjective) expectation of privacy,'" and (2) "'whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable.'"      United States v. Dodds   , 946 F.2d 726, 728 (10th Cir. 1991)(quoting    Smith v. Maryland   , 442 U.S. 735, 740 (1979))(internal quotations omitted).

The district court assumed that Mr. Jones met his burden on the first factor. We are willing to make that assumption as well, turning the focal point of the standing inquiry into whether his "subjective expectation of privacy is one that society is prepared to recognize as reasonable."  We agree that it is not.  Mr. Jones was an invitee of Ms. Rhode, not the owner of the condo.  He knew that Ms. Rhode was not the owner.  Moreover, both Ms. Rhode's and Mr. Jones' presence in the condo was not only contrary to the contingent permission granted Ms. Rhode, but also unlawful.  Ms. Rhode used a locksmith to gain entry, and the owner of the condo did not and would not grant permission for Mr. Jones to use the condo.  Quite simply, society is not prepared to accept this arrangement as

- 14 -

conferring a reasonable expectation of privacy.       See United States v. Carr  , 939

F.2d 1442, 1446 (10th Cir. 1991);     United States v. Cassell   , 542 F.2d 279 (5th Cir.

1976).   The district court properly refused to suppress the challenged evidence.


C.  District Court's Refusal to Sever Counts

Mr. Jones contends that the district court erred by refusing to sever the

counts charging him as felon in possession of firearms and ammunition from the

other counts.  He argues that refusal to sever was unfairly prejudicial because it

allowed the jury to hear about his history as a felon, when that history would

otherwise have been inadmissible on the other counts.

"'The decision to grant a severance is within the sound discretion of the

trial court, and its decision will not ordinarily be reversed in the absence of a

strong showing of prejudice.'" United States v. Valentine, 706 F.2d 282, 289-90

(10th Cir. 1983)(quoting United States v. Strand, 617 F.2d 571, 575 (10th Cir.

1980)).  "The burden of a defendant to show an abuse of discretion in this context

is a difficult one." Id. at 290.

Joinder of the firearm and ammunition status offenses with the substantive

robbery charges was appropriate under Fed. R. Crim. P. 8(a), which provides that

"[t]wo or more offenses may be charged in the same indictment . . . in a separate

count for each offense if the offenses charged . . . are based on the same act or

transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." In this case, the felon in possession of a firearm and ammunition charges were connected to Mr. Jones' participation in the robberies for which he was charged.

Even though counts are properly joined in an indictment, the trial court has the discretion to order severance under Fed. R. Crim. P. 14 if the defendant will be prejudiced by the joinder. Mr. Jones relies upon Valentine to argue that severance is compelled in this case. In doing so, he elevates dicta above the holding of the case. In Valentine, we recognized the "persuasiveness" of a Third Circuit guideline under which "severance should be granted where evidence of the prior conviction would be admissible on one or more counts but inadmissible on others." Id. However, Valentine undercuts Mr. Jones' position because, in that case, involving the joinder of substantive drug offenses with firearms status crimes, we declined to follow the guideline. We found no prejudicial joinder because "the charges grew out of the defendant's own conduct" and the "prior conviction was not given unnecessary or undue emphasis at trial." Id. Here, the relationship of the charges clearly grew out of Mr. Jones' own conduct. Moreover, Mr. Jones stipulated to a prior felony conviction, thereby shielding the jury from the prejudicial details of his prior activities. Finally, the district court issued a limiting instruction to the jury. The district court clearly did not abuse

- 16 -

its discretion in denying Mr. Jones' motion to sever.

D. <u>District Court's Limitation of Cross-Examination</u>

Mr. Jones argues that the district court erred in refusing to allow him to cross-examine a key prosecution witness, Tracy Linn Brown, on his history of mental illness. We review a trial court's limitation on cross-examination of a witness for an abuse of discretion, and will reverse "only if any error affected the substantial rights of the accused." <u>United States v. Begay</u>, 144 F.3d 1336, 1339 (10th Cir. 1998). In this case, the district court's decision to limit the cross-examination of Mr. Brown was not an abuse of discretion.

The court allowed Mr. Jones to cross-examine Mr. Brown outside of the presence of the jury regarding his history of any mental illness and any medications that he was taking at the time of trial and at the time of the events in question. Mr. Brown testified that neither his depression nor any medication he took to combat that illness caused him any problems with memory, perception, or comprehension. VIII R. at 49-52. According to the district court, Mr. Jones had failed to establish any nexus between Mr. Brown's history of depression or use of medication, and his ability to perceive or remember events. The court noted that if Mr. Jones could produce a medical expert to demonstrate how depression or related medications could significantly affect perception or recollection, it would

reconsider its ruling, but Mr. Jones produced no such testimony. Additionally, the district court permitted cross-examination on Mr. Brown's consumption of drugs and alcohol as it related to his memory, perception, and credibility.

Finally, we note that Mr. Jones' reliance on the harmless error analysis outlined in Delaware v. Van Arsdall, 475 U.S. 673 (1986) is unavailing. Quite simply, there has been no violation of the confrontation clause of the Sixth Amendment in this case. Therefore, analysis under the harmless error standard is inappropriate.

E. Constitutionality of Life Sentence

The district court sentenced Mr. Jones to a life sentence under the "three strikes" provision of 18 U.S.C. § 3559(c) and added a consecutive sentence of 45 years for the firearms convictions. Mr. Jones contends that such a sentence is disproportionate to the gravity of his crimes and therefore violates the Eighth Amendment. We review constitutional challenges to a sentence de novo, United States v. Angulo-Lopez, 7 F.3d 1506, 1508 (10th Cir. 1993), and find that his sentence is constitutional.

In Solem v. Helm, 463 U.S. 277, 292 (1983), the Supreme Court enunciated a three-pronged analysis for reviewing Eighth Amendment proportionality challenges. The test instructed courts to examine: (1) the gravity of the offense

and harshness of the penalty; (2) sentences imposed on other criminals in the jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions. We have ruled that Justice Kennedy's plurality opinion in Harmelin v. Michigan, 501 U.S. 957 (1991) narrowed Solem and sets forth the applicable Eighth Amendment test. Hawkins v. Hargett, 200 F.3d 1279, 1282 (10th Cir. 1999). Under this test, we first look only at the relation of the sentence to Mr. Jones' crimes. If we find no "gross disproportionality," we do not proceed to a comparative analysis. Id.

We do not find Mr. Jones' sentence for the commission of five robberies and assorted firearms violations after multiple convictions for previous armed robberies to be grossly disproportional. Further, we note that the sentence of life imprisonment is mandated by Congress under 18 U.S.C. § 3559(c). We must "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." Solem, 463 U.S. at 290. Because we do not find the penalty to be grossly disproportional, we need not proceed further in our inquiry.

F. Was Prior Robbery a Serious Violent Felony?

Under the "three-strikes" statute, 18 U.S.C. § 3559(c), a sentence of life

imprisonment is mandated for a person convicted of a serious violent felony if that person has previously been convicted of two or more serious violent felonies. Mr. Jones had previously been convicted of two robberies, and robbery generally qualifies as a "serious violent felony." See id. § 3559(c)(2)(F). However, a robbery will not qualify as a serious violent felony for the purposes of the "three-strikes" statute if "the defendant establishes by clear and convincing evidence that (i) no firearm or other dangerous weapon was used in the offense and *no threat of use of a firearm or other dangerous weapon was involved in the offense*; and (ii) the offense did not result in death or serious bodily injury . . . ." Id. § 3559(c)(3)(A) (emphasis added).

Mr. Jones contends that one of his previous robbery convictions should be considered a non-qualifying felony, thereby rendering his current conviction only his second serious violent felony conviction for purposes of the "three-strikes" law. He argues that because during the robbery in question neither he nor any of his co-defendants possessed a gun, there could not have been a "threat of use of a firearm" despite the fact that one of his co-defendants announced that he had a gun and made gestures consistent with having a gun.

We review de novo a district court's enhancement of a sentence pursuant to the "three-strikes" statute. See United States v. Gottlieb, 140 F.3d 865, 868 (10th Cir. 1998). In United States v. Washington, 109 F.3d 335, 337 (7th Cir. 1997),

our sister circuit held that the defendant's written note that stated "I have a gun" constituted a threat of use under § 3559(c)(3)(A), although no firearm was present. We agree that the "threat of use" includes a "communicated expression to a victim that the defendant would use a firearm." See Gottleib, 140 F.3d at 872 (discussing Washington, 109 F.3d at 337). Cf. United States v. Hawkins, 901 F.2d 863, 865 (10th Cir. 1990) (holding that "trial court's upward departure on the basis of defendant's claim that he possessed a gun was improper" because under USSG Section 5K2.6 "the use of a weapon does not include claimed possession of a nonexistent weapon"); United States v. Coe, 891 F.2d 405, 411 (2d Cir. 1989). Here, the record indicates that the defendant's co-conspirator verbally communicated that a firearm was present, and made gestures to indicate as much. As such, Mr. Jones' artificial reading of the statute is rejected. Mr. Jones entered a conspiracy to rob a store, and one of his co-conspirators indisputably threatened to use a gun. The fact that no gun was actually present does not prevent it from being a "threat." Congress has many logical reasons to legislate against such threats, including prevention of fear, intimidation, and violent response. We believe they have done so in this statute.

AFFIRMED.