**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL DEWAYNE BELL,

Defendant - Appellant.

No. 07-5074

(N.D. Oklahoma)

(D.C. No. CR-06-140-HDC)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **MURPHY**, and **HARTZ**, Circuit Judges.

I. **Introduction**

Michael Bell was convicted of aggravated bank robbery, in violation of 18

U.S.C. § 2113(a) and (d), and carrying a firearm during and in relation to a crime

of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Although the court

appointed trial counsel for the defense, Bell insisted on proceeding pro se. The

court granted the defendant's request, but appointed Michael McGuire as stand-by

counsel to assist upon Bell's request. Following the guilty verdict, Bell filed a

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

pro se motion for judgment of acquittal. Several days later, Bell requested that the court reappoint McGuire as counsel to represent Bell in pursuing post-trial motions. McGuire thereafter filed a motion for a new trial. The district court denied the motions for a judgment of acquittal and new trial.

On appeal, Bell raises multiple claims of error and challenges his conviction and his sentence. We exercise our jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because Bell's appeal is without merit, we **affirm** the district court.

## II. Background

On the morning of February 28, 2006, Bell entered Arvest Bank in Tulsa, Oklahoma, carrying a weapon. Together with Mark Brown, Bell had devised a plan to rob the bank. Brown served as look-out as Bell entered the bank. Bell proceeded to a bank teller, Annette Wagner, pointed a gun at her, and demanded money. When Wagner did not hurry, Bell became very angry and aggressive. He admonished Wagner, telling her to "Hurry up. Hurry Up. Don't make me shoot you." Following the robbery, Bell drove to a cemetery outside of Tulsa where he met Brown. At the cemetery, the two men split the proceeds of the robbery. Brown received $1,000 for his efforts.

At trial, the government presented numerous witnesses to support its case against Bell. The government introduced surveillance video tape, including a still photo enlargement of the robber. Ashley Hill, an Arvest Bank teller, testified that

she saw the robber point a gun at her co-worker. She later picked the defendant out of a photo line up and also made an in-court identification. A second bank employee, Kristen Casey, made an in-court identification of Bell as the robber. Brown testified as to how he and Bell planned the robbery, what Bell was wearing, and how he watched from his car as Bell entered the bank and committed the robbery. Michael Stokes also testified against Bell. He was Bell's cell mate at the David L. Moss Correctional Center during Bell's pre-trial detention. Stokes testified that during the time of detention, Bell admitted to robbing the bank and taking approximately $3,000 from the teller. Stokes also testified Bell had informed him that he was going to use Catherine Caviness, Bell's ex-girlfriend, as his alibi witness.

Bell, representing himself, called Caviness as his alibi witness. She testified that she could not remember whether she was, indeed, with Bell on the day of the robbery. Bell also presented the testimony of Tulsa Police Officer Bruce Alexander. Alexander, while investigating this case, used an Oklahoma Department of Corrections photograph of Bell taken when he had been previously incarcerated. Alexander testified that the photograph of Bell depicted a small scar or blemish on Bell's chin. He also testified that early in his investigation he had identified another suspect, Derrick Williams, who resembled the robber in the surveillance video. During the investigation, Alexander interviewed a woman who identified Williams, not Bell, as the man in the surveillance video. In fact,

Williams had been charged with robbing Arvest Bank, before the charges were dropped and the investigation focused on Bell. Finally, Bell took the stand in his own defense. He testified he spent the day of the robbery visiting the cemetery where his mother and grandmother are buried with his girlfriend, Caviness.

Bell attempted to subpoena a second alibi witness, Janice Marsh, to testify in his defense. He asserted that Marsh would be able to confirm that on the day of the robbery, he had called her to ask directions to the cemetery. The government, in its response to Bell's motion for a new trial, stated that according to U.S. Marshal records, a deputy U.S. Marshal went to Marsh's address three times—April 26, 27, and 28—and found no one home. Although the Marshal left a business card with a request to call, Marsh never called. Instead, Caviness phoned and advised that Marsh knew about the subpoena and believed Marsh would attend the trial on April 30, 2007. Upon learning that Marsh would be called as an alibi witness, the FBI called her by phone. Marsh informed the FBI that the defendant called her sometime in January or February of 2006 to ask for directions to the cemetery. Marsh neither confirmed the exact date nor if the defendant was in fact with his girlfriend.

On May 2, 2007, the jury found Bell guilty of aggravated bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Bell

was sentenced to life imprisonment pursuant to the "Three Strikes" provision of 18 U.S.C. § 3559(c). He appeals his convictions and sentence.

## III. Discussion

### A. Sufficiency of the Evidence

Bell argues insufficient evidence existed to support his convictions. "We review de novo whether the government presented sufficient evidence to support a conviction." *United States v. Summers*, 414 F.3d 1287, 1293 (10th Cir. 2005). We view the evidence in a light most favorable to the prosecution, neither weighing nor second-guessing the fact-finding decisions of the jury. *Id.* "[O]ur role is limited to determining whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *Id.* at 1293-94 (quotation omitted).

In denying Bell's motion for a judgment of acquittal, the district court concluded sufficient evidence supported the convictions. We agree. The government presented video surveillance, including a close-up of the robber, at trial. Two bank employees identified Bell in court and from a photo array. Further, the government introduced evidence that Bell admitted robbing the bank to a cell mate. Brown also implicated the defendant in the robbery by recounting the events of that day and testifying that Bell had committed the robbery. Related to the firearm charge, the surveillance video clearly shows the robber carrying a

firearm. Moreover, two eyewitnesses testified that they saw the robber with a firearm and Brown testified that Bell stated he was in possession of a firearm prior to the robbery. Although Bell questions the credibility of several witnesses, credibility is a determination for the jury. *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008). In viewing the evidence in the light most favorable to the government, it is clear the prosecution met its burden of presenting direct and circumstantial evidence sufficient to support the two convictions.

## B. Motion for a New Trial

Bell argues the district court erred in denying him a new trial. Rule 33 of the Federal Rules of Criminal Procedure authorizes district courts to grant new trials "if the interest of justice so requires." This court reviews the denial of a motion for a new trial for an abuse of discretion. *United States v. Gwathney*, 465 F.3d 1133, 1144 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 2151 (2007). "A decision is an abuse of discretion only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotation omitted).

Bell contends a new trial is warranted because Janice Marsh was not subpoenaed to appear at trial. In order for Bell to show a denial of compulsory process, he must show that the witness's testimony would have been both "favorable and material." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982). The district court concluded that the defendant waived the issue and that, in any event, he "has not shown any actual prejudice from Ms. Marsh's failure to

testify. Ms. Marsh's proposed testimony would be of questionable value." We agree. Even if Bell did not waive the issue by not raising it at trial, he failed to make an offer of proof as to why Marsh's testimony would have been favorable and material. Bell claims that Marsh would have testified that he called her on the date of the robbery to get directions to the cemetery. As the district court concluded, this testimony would not have established an alibi for Bell as it fails to prove that Bell was at the cemetery at the time of the robbery.

Bell also seeks a new trial, arguing that witnesses were harassed into not cooperating with the defense. He presented no evidence to the district court on this matter. Instead, he offered nothing more than conclusory allegations that the government acted inappropriately. We therefore hold the district court did not abuse its discretion in denying Bell's motion for a new trial.

### C. Evidentiary Issues

In the course of its investigation, the police created a photo array which included a picture of Bell taken when he had been previously incarcerated. This photo array was used by bank employees to identify Bell as the robber. Officer Alexander testified about using this photograph and remarked that Bell had a scar or blemish on his chin. Further, when Alexander compared Bell's photograph with the surveillance video, he remarked that both individuals had the same mark in the same spot. At this point, Bell asked the court for a pair of clippers so that he could shave off his facial hair. This request was a turn-about for Bell, who had

objected to the government's request for Bell to shave his facial hair before the trial. Bell argues the district court abused its discretion by admitting this photograph into evidence. He also maintains the district court erred in denying him hair clippers.

We generally review evidentiary rulings for an abuse of discretion. *United States v. Ramirez*, 479 F.3d 1229, 1245 (10th Cir. 2007). A party may not, however, "induce[] action by a court and later seek[] reversal on the ground that the requested action was error." *United States v. Edward J.*, 224 F.3d 1216, 1222 (10th Cir. 2000). Bell cannot claim the use of the photo at trial was in error because he introduced the photo himself. Thus, even if its introduction was in error, it was invited. Bell also claims the district court's denial of clippers was in error. He cites to no law supporting the proposition that the district court had an affirmative duty to provide him access to hair clippers. We therefore conclude that the district court did not err in admitting the photo array or by failing to provide clippers to the defendant.

### D.    Sixth Amendment

Pursuant to the Sixth Amendment, a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. As the Supreme Court has explained, the right to counsel "means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him." *Maine v. Moulton*, 474 U.S. 159,

170 (1985) (quotation omitted). Once judicial proceedings have begun, the government is prohibited from deliberately eliciting incriminating statements from the defendant without the assistance of counsel. *Id.* at 171-73; *Massiah v. United States*, 377 U.S. 201, 206 (1964). Thus, post-indictment, the government may not direct a jailhouse informant to deliberately elicit information about the crime from the defendant. *United States v. Henry*, 447 U.S. 264, 270-74 (1980); *see also United States v. Geittmann*, 733 F.2d 1419, 1427 (10th Cir. 1984) ("*Massiah* and *Henry* condemn deliberate efforts by the government to create situations in which indicted defendants are likely to make incriminating statements to seemingly independent others in the absence of counsel.").

To establish the government violated Bell's Sixth Amendment right to counsel, "a court must find that defendant's statements (1) were made to a government agent, and (2) were deliberately elicited." *United States v. Johnson*, 4 F.3d 904, 910 (10th Cir. 1993) (quotation omitted). We review the district court's factual determinations for clear error and its constitutional legal rulings de novo. *Id.* Michael Stokes shared a cell with Bell during the defendant's pre-trial incarceration. Stokes testified at trial that Bell admitted to robbing Arvest Bank and then attempted to create an alibi by driving south. Specifically, Stokes testified that Bell planned on using Caviness as his alibi witness. Although Stokes later relayed this information to the government, he testified that no one in the government had contacted him about obtaining information from Bell.

Undoubtedly, Bell's right to counsel had attached. He has presented no evidence, however, that Stokes was a government agent. In fact, the only testimony at trial established that Stokes sought out the government *after* Bell confessed to him. In *United States v. Taylor*, this court held "the protections of the Sixth Amendment right to counsel enunciated in *Massiah* and *Henry* are inapplicable when . . . statements by a defendant are made to an individual who is not an agent for the Government, although he may be a Government informant." 800 F.2d 1012, 1015 (10th Cir. 1986). We therefore conclude Bell's Sixth Amendment right to counsel was not violated.

### E. Motion to Sever

Bell filed two pro se motions requesting a separate trial from his co-defendant, Mark Brown. Before the trial, Brown pleaded guilty in this case. Thus, at the pre-trial hearing, the government ruled that Bell's motions to sever the trial were moot. On appeal, Bell appeals the district court's ruling. His counsel, however, admits that the motion to sever was moot and therefore the claim is without merit. We agree.

### F. Sentencing

Bell challenges his sentence on two grounds. First, he argues his prior convictions do not qualify as predicate violent felonies, and therefore do not trigger a mandatory life sentence under 18 U.S.C. § 3559(c)(1). Under the Three Strikes law, the "district court must sentence to life in prison any defendant who

-10-

(1) is convicted in a federal court of a 'serious violent felony' and (2) 'has been convicted,' on prior separate occasions, of two or more 'serious violent felonies' in federal or state courts." *United States v. Romero*, 122 F.3d 1334, 1341 (10th Cir. 1997) (quoting 18 U.S.C. § 3559(c)(1)(a)). Second, he argues a life sentence for robbery violates the Eighth Amendment's ban on cruel and unusual punishment. We review a sentence imposed pursuant to 18 U.S.C. § 3559(c) de novo. *Romero*, 122 F.3d at 1342. We also review de novo the question of whether a criminal sentence violates the Eighth Amendment. *United States v. Angelos*, 433 F.3d 738, 750 (10th Cir.), *cert. denied*, 127 S. Ct. 723 (2006).

Bell makes numerous challenges to his prior convictions, which served as the predicates for his life sentence under § 3559(c)(1). After reviewing the record, we are convinced the district court properly determined Bell was previously convicted of at least two prior violent felonies. On May 2, 1994, Bell robbed Love's Country Store. On May 9, Bell robbed Happy Foods Grocery Store and a Kwick Stop Convenience Store. In October of 1994, he pleaded nolo contendere to two counts of robbery for the Love's and Kwick Stop convenience store robberies and was sentenced to twenty-five years' imprisonment. The next year, he pleaded guilty to robbery by force or fear, arising from the Happy Foods Grocery robbery. He was sentenced to twenty-five years' imprisonment, to run concurrently with his other robbery sentence. Bell contends that because his sentences were consolidated to run concurrently, the convictions should be

considered a single prior felony. This argument is without merit. Although the sentences ran concurrently, the crimes represent independent felony convictions and alone, establish the requisite prior strikes. *See, e.g.*, *United States v. Jones*, 898 F.2d 1461, 1463-64 (10th Cir. 1990) (explaining in the context of U.S.S.G. § 4A1.2(a)(2) prior felony convictions that are unrelated are not counted as a single felony merely because the sentences run concurrently). Bell's prior convictions, therefore, satisfy § 3559(c)(1) and the district court was required to sentence the defendant to life imprisonment.[1]

Bell's Eighth Amendment claim also fails. "[T]he Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Ewing v. California*, 538 U.S. 11, 21 (2003) (quotation omitted). It is only in the "exceedingly rare" and "extreme" case, however, that a non-capital sentence will be disproportionate to the crime such that it violates the Eighth Amendment. *Id.* (quotation omitted); *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). We must "examine the sentence at issue in relation to the crime only for gross disproportionality." *United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir. 2006) (quotation omitted). If we find the sentence is not grossly disproportionate, our analysis ends. *Harmelin v. Michigan*, 501 U.S. 957, 1005

---

[1]Bell was also convicted in Oklahoma of Riot. In his brief, he makes at least four challenges to the use of this conviction as a predicate offense. Because Bell's two prior felony robbery convictions are sufficient to sustain his life sentence, we need not address these arguments.

(1991) (Kennedy, J. concurring); *United States v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000).

In *Jones*, we held a life sentence plus a consecutive term of forty-five years under the Three Strikes provision did not violate the Eighth Amendment. 213 F.3d at 1261-62. In that case, the defendant had been convicted of multiple offenses involving robbery, extortion, and the use of firearms. *Id.*; *see also Gurule*, 461 F.3d at 1242, 47-48 (holding life sentence under Three Strikes law was not grossly disproportionate where defendant was convicted of car jacking and had two prior robbery convictions). Further, we explained that because the sentence was required by statute under § 3559(c), "[w]e must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Jones*, 213 F.3d at 1262 (quotation omitted). Therefore, we cannot conclude Bell's sentence is grossly disproportionate to his crime or that his case is "exceedingly rare" or "extreme."

**IV.  Conclusion**

For the foregoing reason, we **affirm** Bell's conviction and sentence.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

-13-