**UNITED STATES COURT OF APPEALS**

**TENToH CIRCUIT**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

v.

GILBERT WAYNE WILES, JR.,

              Defendant - Appellant.

No. 16-8074
(D.C. No. 2:16-CR-00019-ABJ-2)
(D. Wyo.)

––––––––––

**ORDER AND JUDGMENT**[*]

––––––––––

Before **LUCERO**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

––––––––––

The district judge aptly described this case as one "surrounded in mystery." (R.

Vol. 2 at 160.)  While the exact details remain a mystery, it is no mystery that Gilbert

Wayne Wiles, Jr., and his co-defendant Scott Lewis were up to no good.

––––––––––

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A).  Citation to unpublished decisions is not encouraged, but not prohibited. Fed. R. App. 32.1.  Citation is appropriate as it relates to law of the case, issue preclusion, and claim preclusion.  Unpublished decisions may also be cited for their persuasive value.  10th Cir. R. 32.1(A).  Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished).  *Id*.

## I. Background

According to the indictment, in April 2013, Wiles purchased a 1968 Cessna 206 airplane, tail number N6214V, from an unknown seller for approximately $130,000 in cash.[1] Lewis was present at the sale. Knowing the bill of sale would be filed with the Federal Aviation Administration (FAA), Wiles directed the seller to make it out to Morris Point, a limited liability company organized under the laws of the State of New Mexico.[2] Despite knowing they could not operate the airplane without doing so,[3] neither Wiles nor Lewis registered it with the FAA.

In June 2013, Lewis and Wiles serviced the airplane at the Centennial airport in Englewood, Colorado. Wiles, using the alias "Karl Stassney," paid for the services ($2,320) with cash and money orders. Later, in October 2013, they purchased a short takeoff and landing kit for $2,200, paying cash. They had an aircraft repair and maintenance company install the kit; yet again they used aliases and paid for the installation ($12,332.15) with cash and money orders.

A month later, in November 2013, Lewis landed the airplane at the Yellowstone Regional Airport in Cody, Wyoming. Wiles was the lone passenger. Neither announced

---

[1] At the change of plea hearing and in the plea agreement, Wiles agreed he was "involved in purchasing the airplane . . . ." (R. Vol. 2 at 141, Vol. 3 at 18.)

[2] Morris Point was organized in December 2011. The record does not reveal who organized Morris Point but the individual or entity was known to the grand jury. The government believed Morris Point to be a "shell company." (R. Vol. 2 at 152.)

[3] Both Wiles and Lewis were licensed pilots; Wiles was also a certified flight instructor.

the airplane's tail number over the radio or contacted the airport by radio before landing. That is not required, but most pilots do so as a matter of courtesy. Wiles and Lewis were also flying under Visual Flight Rules (VFR), which allowed them to fly without filing a flight plan.[4] Upon landing, they covered the airplane's windows with shades. Due to the inclement weather, Lewis, using the alias "Ken Howard," asked to sleep overnight at Choice Aviation, a fixed-based operator at the airport. When he was told he could not, he had the plane fueled and de-iced. He paid for these services in cash with one hundred dollar bills. He and Wiles flew out of the airport that night despite the inclement weather.

On February 27, 2014, Lewis and Wiles again landed at the Yellowstone Regional Airport. As Yogi Berra would say, it was "déjà vu all over again." Like in November, they did not announce the plane's tail number over the radio, they had not filed a flight plan, and they immediately covered the airplane's windows upon landing. This time, however, they removed three large bags, including a duffle bag, from the airplane. They left the plane in a Choice Aviation hanger and took a shuttle from the airport to a local hotel. When the driver of the shuttle tried to pick up the duffle bag, Lewis and Wiles would not let him touch it, but they did allow him to help with the other bags. Once at the hotel, they checked in under the name "Ken Howard" and paid for the room in cash. They immediately took their bags to the room, placed the "do not disturb" sign on the door, and did not leave the room. They requested a computer cable; when it was

---

[4] As a result, the government alleged "no one could track the airplane." (R. Vol. 1 at 47.) More accurately, it means their flight was not easily tracked.

delivered they opened the door only enough to slide the cable through and return a tip.

Based on the November and February landings, the Director of Operations at Choice Aviation reported the suspicions he harbored to the Cody police department. Officer Ron Parduba came to the airport where he observed the airplane in the hanger; the plane did not contain a registration sticker, but it had what appeared to be an after-market hatch installed on its underside. Parduba deployed a drug dog around the airplane; it alerted. He obtained warrants to search the plane and hotel room for drugs and drug paraphernalia. The search for drugs came up short both in the plane and the hotel room. However, Parduba seized $259,717 in cash and three fake driver's licenses containing Lewis' photograph from the hotel room.

Lacking hard evidence of something more, on January 14, 2016, the government indicted Wiles and Lewis with (1) conspiracy to operate an unregistered aircraft in violation of 49 U.S.C. § 46306(b)(6)(A) and 18 U.S.C. § 371 (Count 1) and (2) aiding and abetting the knowing and willful operation of an unregistered aircraft in violation of 49 U.S.C. § 46306(b)(6)(A) and 18 U.S.C. § 2 (Count 2). They filed various pretrial motions. Relevant here, they each filed a motion to sever the trial under Fed. R. Crim. P. 14. Lewis also filed a motion in limine under Fed. R. Evid. 404(b) to exclude evidence of his prior 2010 misdemeanor conviction for violation of California's Health and Safety Code. That conviction stemmed from his involvement with a marijuana drug smuggling group where 180 pounds of marijuana and $261,122 in cash were seized. He also sought to exclude the following evidence: the cash and money order transactions, the cash found

in the hotel room, the creation of Morris Point, the failure to announce the plane's tail number to the airport upon landing, the installation of the short landing and takeoff kit, and the covering of the airplane's windows upon landing. Wiles joined the motion in limine.

The government opposed both the severance motion and the motion in limine. As to the latter, it argued all the evidence except Lewis' prior conviction was intrinsic to the charged crimes and therefore Rule 404(b) did not apply. As to Lewis' prior conviction, it claimed it was relevant to prove his motive for flying an unregistered aircraft.

The judge held a hearing on April 8, 2016, after which he took the motion to sever "under advisement," stating a formal order would issue the following week. (R. Vol. 2 at 33.) He "predict[ed]" the motion would be denied, saying "it's likely [it] will be." (*Id.*) As to the motion in limine, he granted Wiles and Lewis a continuing objection but agreed with the government that although Lewis' prior conviction could not be received as evidence of Lewis's guilt as to the crimes alleged in the indictment, it was admissible for the limited purpose of showing "[his] planning, motive, [and] intent." (R. Vol. 2 at 77.) With respect to the remaining evidence sought to be excluded, he concluded it was not Rule 404(b) evidence because each item was inextricably intertwined with the charged crimes.

Five days later, on the morning of April 13, 2016, Lewis pled guilty pursuant to a plea agreement (its terms are not revealed in the record) to Count 2 of the indictment. Approximately two hours later, the judge issued a written order addressing the pretrial

motions.  As predicted, he denied the motion to sever.  He decided the defendants had not

carried their burden of showing actual prejudice if they were tried together or that a joint

trial would compromise a specific trial right or prevent the jury from making reliable

judgments about guilt or innocence.  Although "cognizant that . . . Lewis's prior

history . . . , if not considered and addressed with care, has the potential to tar Wiles with

the same brush that will paint Lewis," he nevertheless decided "such risk can be obviated

through the use of limiting instructions."  (R. Vol. 1 at 192-93.)  He also formally denied

the motion in limine for the reasons given at the hearing.

On April 15, 2016, <u>two days after Lewis pled guilty</u>, Wiles pled guilty to Count 2

(aiding and abetting the knowing and willful operation of an unregistered aircraft).

Under his plea agreement, the parties agreed to a maximum sentence of three years'

probation.  Moreover, the plea was conditional; Wiles reserved the right to appeal from

"the adverse determination" of his motion to sever trial.  (R. Vol. 3 at 18.)  He did not

reserve appeal rights relating to the judge's Rule 404(b) decision.  He also agreed to

forfeit any interest in the airplane.[5]  On June 24, 2016, the judge sentenced him to three

years of supervised probation.

## II.  Discussion

According to Wiles, denying his motion to sever the trial was wrong.  *See United*

---

[5] The airplane was criminally forfeited on August 15, 2016.  Both the plane and the cash seized from the hotel room were also subject to a civil forfeiture proceeding.  In the civil proceeding, Wiles did not claim an interest in either item but Lewis claimed an interest in both.  Lewis eventually stipulated to the forfeiture of all but $25,000 of the cash.

- 6 -

*States v. Dewberry*, 790 F.3d 1022, 1035 (10th Cir. 2015) ("This court reviews the denial of a motion to sever for abuse of discretion"). The government, for its part, disagrees, but also says we should dismiss this appeal as moot. Because it is jurisdictional, mootness is a threshold issue. *See Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005) ("[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." (quotation marks omitted)).

The government tells us the motion to sever became moot upon the court's acceptance of Lewis' guilty plea (on April 13, 2016) because, at that point, Wiles would be tried alone at the trial scheduled six days hence, on April 19, 2016. Acknowledging Wiles' express reservation of the right to appeal from an "adverse determination" of his motion to sever, *see* R. Vol. 3 at 18 and Fed. R. Crim. P. 11(a)(2), the government argues he nevertheless cannot appeal from the denial of that motion because the judge should have, but failed to, dismiss it as moot.[6] Such a dismissal, the government says, would not be an "adverse determination."

Wiles sees it differently. He claims a case is moot only when it is impossible for a

---

[6] It is understandable why the judge failed to dismiss the motion as moot. Lewis pled guilty on the morning of April 13, 2016. About two hours later, the judge filed his 31-page written order addressing the pretrial motions, including the motion in limine. Most likely, the judge had already completed or had substantially completed that order before Lewis' guilty plea and simply failed to consider the impact of that plea on the motion to sever.

The government, for its part, should have moved to dismiss the motion to sever as moot after Lewis pled guilty and prevented Wiles from preserving the right to appeal from that dismissal. It acknowledges its failure, explaining "at the time, [it did not] notice[] the error." (Government's Br. at 9 n.3.)

court to grant any effective relief. That is not the case here, he tells us, because we can grant the relief he seeks—the right to withdraw his conditional guilty plea. In his view, the government's mootness arguments are flawed because it provides no authority for its assertion that a dismissal of a motion as moot is not an "adverse determination" that can be preserved in a conditional plea. In any event and irrespective of what should have been done, Wiles says the judge's denial of the motion to sever on the merits at the pretrial motions hearing (prior to Lewis' guilty plea) was an "adverse determination" which he could and properly did preserve. Moreover, he claims Lewis' guilty plea did not moot the motion to sever because until he was sentenced, Lewis could have withdrawn his plea.[7] Therefore, as the argument goes, the possibility of a joint trial remained.

Our jurisdiction is limited to the adjudication of live cases and controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir.2010) ("We have no subject-matter jurisdiction if a case is moot."). "[A]n actual controversy must be extant at all stages of review, not merely at the time the [case] is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quotation marks omitted). "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When

---

[7] One might well assume the possibility of Lewis withdrawing his guilty plea is precisely the reason Wiles chose to preserve his right to appeal from the denial of his severance motion. That never happened, but Wiles sees a fortuitous opening worthy of exploitation.

it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) (citation and quotation marks omitted).

Wiles reserved no appeal rights concerning the judge's Rule 404(b) ruling and raises no arguments regarding it in this appeal. His appeal is limited to the severance issue and it became moot with Lewis' guilty plea. *See United States v. Bell*, 290 F. App'x 178, 183 (10th Cir. 2008) (agreeing with counsel that motion to sever was rendered moot by co-defendant's guilty plea); *see also United States v. Morgan*, 238 F.3d 1180, 1184 (9th Cir. 2001) (the defendant's motion to sever became moot when his co-defendant pled guilty). Although Wiles claims it was not moot until Lewis was sentenced (because Lewis could have withdrawn his guilty plea until then), that is not the law.[8] Nevertheless, even if the motion to sever was not moot in the district court, it

---

[8] Wiles cites Fed. R. Crim. P. 11(e), which prohibits a defendant from withdrawing his plea after sentencing. However, the rule does not speak to when a motion to sever trial becomes moot. Case law tells us it becomes moot upon a co-defendant's guilty plea. S*ee Bell*, 290 F. App'x at 183; *Morgan*, 238 F.3d at 1184. In any event, even if the motion to sever was not moot until Lewis was sentenced, that happened on June 22, 2016. At that time, Wiles had not been sentenced and could have moved to withdraw his plea for "a fair and just reason." *See* Fed. R. Civ. P. 11(d)(2)(B). He did not seek to withdraw. Yet, he now wants us to allow him the opportunity to withdraw his plea under Rule 11(a)(2). But, as we will explain, Rule 11(a)(2) only allows a defendant to withdraw his plea if he "prevails" in appealing from "an adverse determination of a specified pretrial motion." Because this appeal is moot, he cannot "prevail" on appeal.

Wiles also relies on *United States v. Bernard*, 680 F.3d 1206 (10th Cir. 2012), and *United States v. Scott*, 884 F.2d 1163 (9th Cir. 1989). *Bernard* is inapposite because he prevailed on the merits of his appeal, *see* 680 F.3d at 1212-15; Wiles cannot prevail in this moot appeal. In *Scott*, the Ninth Circuit relied on Rule 11(a)(2) to allow an otherwise

(Continued . . .)

certainly is now.  Not only did Lewis plead guilty, he has been sentenced.  And, unlike Wiles, he did not appeal and the time to appeal has long since passed.  Wiles was not subject to a joint trial when he pled guilty, and there is no chance he ever will be. Reaching the merits of the motion to sever would have no "real world" effect.

We recognize that Fed. R. Crim. P. 11(a)(2) allows defendants to enter conditional guilty pleas, as Wiles did.  *See* Fed. R. Crim. P. 11(a)(2) ("With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.").  If a defendant who enters a conditional plea "prevails on appeal," he may withdraw his plea.  *See* Fed. R. Crim. P. 11(a)(2). However, because Wiles' appeal is moot, he cannot "prevail."  The unique facts presented here do not entitle Wiles to withdraw his plea.

What Wiles wants is leverage on the government; an opportunity to withdraw his guilty plea provides it.[9]  That may explain his fondness for form over substance, but even if we could do so, honoring his wish would simply place him back in the position he was in when he decided to plead guilty (a sole trial).  At that time, he knew there was no chance of a joint trial because Lewis had pled guilty.  Yet, he chose to plead guilty rather than proceed to an individual trial.  Since he made an informed decision (with the advice

---

moot appeal to proceed.  884 F.2d at 1164-65.  We disagree with *Scott*'s reading of the rule in this context and are not bound by it.

[9] The passage of time alone may discourage the government from wanting to try this case to a jury.

- 10 -

of counsel), he is not entitled to the proverbial "second bite at the apple."

This appeal is moot.[10]

**DISMISSED**.


**Entered by the Court:**


**Terrence L. O'Brien**
United States Circuit Judge

---

[10] "[A]n actual controversy must be extant at all stages of review, not merely at the time the [case] is filed." *Arizonans for Official English*, 520 U.S. at 67 (quotation marks omitted).