### ALLEN et al. v. PHILLIPS PETROLEUM CO.

(Circuit Court of Appeals, Eighth Circuit. June 1, 1926.)

No. 7113.

Mines and minerals ⟨⟩74—Contract for sale of oil lease, together with attached memorandum, held to intend that payment should be made only from proceeds, and to preclude recovery after abandonment, in absence of bad faith.

Contract of sale of oil lease, providing for payment of balance of consideration out of one-third of seven-eighths of first oil produced from leased premises, and attached memorandum, providing for payment out of "oil run," held to intend that consideration was to be paid only from proceeds of oil produced and sold thereunder, and to preclude recovery on abandonment by purchaser, in absence of bad faith.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by E. R. Allen and others against the Phillips Petroleum Company. Decree for defendant, and plaintiffs appeal. Affirmed.

Jordan Sellers, of El Dorado, Ark. (Pat McNalley, of El Dorado, Ark., on the brief), for appellants.

James D. Head, of Texarkana, Ark. (Tom Marlin and Neill C. Marsh, both of El Dorado, Ark., on the brief), for appellee.

Before STONE, VAN VALKEN-BURGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge. Appellants were the owners of undivided interests in two certain oil and gas leases. With their colessees, they proceeded to develop the property until there were seven producing wells thereon. At that point, all of the lessees contracted to sell their interests to appellee and, in performance of such contract, executed an assignment of the leases. The appellee paid the cash consideration required by the contract and assignment and proceeded with development. After about two years of development and payment, from oil runs, to the appellants, appellee abandoned the leases, withdrew therefrom and so notified appellants. At the time of the abandonment, a considerable part of the deferred portion of the purchase price ($177,500) was unpaid.

Appellants filed this bill for accounting and reformation claiming two items: Their proportion of the unpaid purchase price and their proportion of the value of fuel oil used by appellee in the operation of the leases.

The controlling issues before the court were (1) whether the contract and assignment obligated appellee to pay the purchase price balance if it abandoned the leases and (2) whether such instruments gave appellee the right to use, without cost to it, such fuel oil as was reasonably necessary in the operation on the leaseholds. Both of these issues depend upon the contract obligations of the parties and really present but one question which is whether the above balance was to be paid only from the oil produced by and sold from the operation of the leaseholds by appellant.

The assignment is that the consideration for the assignment of the leases was as follows:

"For and in consideration of the sum of seventy-one thousand ($71,000.00) dollars, cash in hand paid, the receipt whereof is hereby acknowledged, and the further consideration of one hundred seventy seven thousand five hundred ($177,500.00) dollars, to be paid out of one-third of seven-eighths (7/8) of the first oil produced and sold from said premises, said consideration to be paid in the manner as directed by memorandum attached to sale contract and agreement, which is made a part by reference thereto."

The material part of the "memorandum attached to sale contract and agreement" above referred to, is as follows:

"It is agreed that payment to be made out of oil run from or sold from the above described lease shall be paid to each of the above named parties in proportion to their interests as indicated."

These quotations seem to be clear and unambiguous to the effect that the only obligation of appellee as to the deferred portion of the purchase price was to pay from oil "produced and sold" from the leases. Appellants contend that the contract, which resulted in the assignment, was such that, if the court should deem the assignment to mean payment only from oil produced and sold, the assignment should be reformed to agree therewith. There is no such allegation or showing of mutual mistake or fraud as to authorize such reformation. However, if basis for reformation were shown in mistake or fraud, an examination of the contract would reveal that the assignment was in true compliance therewith. The essential parts of the contract are:

"Party of the second part agrees to pay said sum of ($71,000.00) dollars cash; and $177,500.00 dollars, out of one-third (1/3) of seven-eighths (7/8) of the first oil produced from said leased premises upon the party of the first part executing a proper and sufficient deed of assignment, assigning said interests as hereinabove described, and upon the acceptance and approval of the title by the attorney for the party of the second part. And it is agreed that party of the second part or its assigns shall pay to the parties of the first part, their heirs or assigns, on or before the 15th day of each month, for 1/3 of 7/8 of all oil sold during the previous month, at the same price as received, which shall not be less than the posted price of the Standard Oil Company of La., for that class of oil until the full amount and sum of $177,500.00 has been paid.

"It is further agreed and understood that parties of the first part shall hold only parties of the second part, or its assigns, responsible for making such payment. First parties hereby agreeing that any company or individual purchasing the oil produced from said above described premises, shall make payment for such oil direct to the Phillips Petroleum Company, or its assigns, and do hereby relieve or release any company or individual purchasing said oil from the responsibility of making any payment to them."

To this contract was attached the "Memorandum of Interest" from which quotation has been made above. It seems to us that, taking the contract alone or the memorandum alone or, as should be done, both together, it is clear that the intention of the parties was that the consideration should consist, first, of a cash payment of $71,000; second, of a further sum of $177,500 to be paid from and only from the proceeds of oil produced on and

sold from the leaseholds by appellants. There is no allegation challenging the good faith of appellee as to operation or abandonment nor any claim that, if it had continued operation of the lease, the oil necessary to pay the above balance would or could have been produced or sold.

The decree should be and is affirmed.